Andrew E. Jillson, *pro hac vice*
Kathryn G. Reid, *pro hac vice*
ROCHELLE MCCULLOUGH, LLP
325 N. St. Paul Street, Suite 4500
Dallas, Texas 75201
Telephone: (214) 953-0182
Facsimile: (214) 953-0185
ajillson@romclaw.com
kreid@romclaw.com

Ellen Friedman (S.B. NO. 127684)
Ruth Stoner Muzzin (S.B. NO. 276394)
FRIEDMAN & SPRINGWATER LLP
350 Sansome Street, Suite 800
San Francisco, CA 94104
Telephone: (415) 834-3800
Facsimile: (415) 834-1044
efriedman@friedmanspring.com
rmuzzin@friedmanspring.com

Attorneys for Creditors
DIAGEO BRANDS BV, DIAGEO NORTH AMERICA,
INC., AND DIAGEO SCOTLAND LIMITED

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| In re: | Case No.: 20-40990-RLE |
| FAIRN & SWANSON, INC., | Chapter 7 |
| Debtor. | **DIAGEO'S COMPLAINT FOR DECLARATORY RELIEF TO DETERMINE (1) WHETHER DIAGEO'S PRODUCTS ARE PROPERTY OF THE ESTATE; (2) THE EXTENT OF WELLS FARGO'S SECURITY INTEREST IN THE DIAGEO PRODUCTS; AND (3) IN THE ALTERNATIVE, WHETHER THE TRUSTEE IS PROHIBITED FROM ASSUMING AND ASSIGNING THE DISTRIBUTION AGREEMENTS ABSENT DIAGEO'S CONSENT OR WHETHER THEY MAY BE TERMINATED PURSUANT TO 11 U.S.C. § 365(e)** |
| DIAGEO BRANDS BV, DIAGEO SCOTLAND LIMITED, and DIAGEO NORTH AMERICA, INC., | |
| Plaintiffs, | |
| v. | |
| LOIS I. BRADY, as Trustee for the Chapter 7 estate of FAIRN & SWANSON, INC., and WELLS FARGO BANK, NATIONAL ASSOCIATION | **Adv. Proc. No. _____** |
| Defendants. | |

Case: 20-04034   Doc# 1   Filed: 08/13/20   Entered: 08/13/20 09:58:34   Page 1 of 28

Diageo Brands BV, Diageo Scotland Limited, and Diageo North America, Inc. (collectively "**Diageo**") files this *Complaint For Declaratory Relief* (the "**Complaint**") and would respectfully show the Court as follows:

## NATURE OF THE CASE

1.     Diageo brings this adversary proceeding to obtain declaratory judgment determining the respective rights and interests between Diageo, Lois L. Brady, the Chapter 7 Trustee ("**Trustee**") in the above-captioned bankruptcy case, Wells Fargo Bank, N.A. ("**Wells Fargo**"), and any prospective buyers of Diageo's trademarked goods. At the time of the bankruptcy filing, Fairn & Swanson, Inc. (the "**Debtor**") had millions of dollars' worth of beer and spirits in its possession pursuant to a non-exclusive license to sell Diageo's goods at the U.S./Mexico border and on marine vessels such as cruise ships.

2.     The distribution agreements between Diageo and Debtor govern the sale of these trademarked goods, and those contracts are governed by English law pursuant to the choice of law clauses agreed to by the parties. England bears a close connection to these international commercial contracts given Diageo's parent company is based in London, and many of Diageo's trademarked products are produced in and shipped from the United Kingdom ("**UK**").

3.     The distribution agreements between Diageo and Debtor required the Debtor to pay the purchase price in full before legal and beneficial title of the goods would pass to Debtor, and until then absolute title was retained by Diageo. This condition existed notwithstanding delivery to and possession by Debtor and is recognized under English law as a valid condition precedent to the transfer of title such that the seller retains an unencumbered interest in the delivered goods that is superior to the interests of the buyer and its secured creditors. Diageo now seeks a declaration from this Court that upholds these legal principals. The law of England,

Case: 20-04034    Doc# 1    Filed: 08/13/20    Entered: 08/13/20 09:58:34    Page 2 of 28

and specifically the UK Sale of Goods Act 1979, recognizes the validity of retention of title clauses, unlike law in the United States that treats retention of title clauses as nothing more than just a security interest in favor of the seller.

4.    In the alternative, even if title to the goods passed to the Debtor, the Debtor's use of the goods is based upon the license of the Diageo trademarks. Without the license provided under the distribution agreements, the Trustee may not use or sell the Diageo products without Diageo's consent, and Diageo has the right to terminate the distribution agreements.

## NOTICE OF RELIANCE ON FOREIGN LAW

5.    Diageo hereby provides notice of its intent to rely on a foreign country's law in accordance with Federal Rule of Civil Procedure 44.1 made applicable by Federal Rule of Bankruptcy Procedure 9017. More specifically, Diageo intends to rely on English law as to Counts 1 and 2 in accordance with the parties' choice of law provision in the contracts governing their transactions.

## JURISDICTION AND VENUE

6.    This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157, 1334, and 2201. This matter is a core proceeding under 28 U.S.C. § 157(b).

7.    This adversary proceeding has been commenced in accordance with Rule 7001 of the Federal Rules of Bankruptcy Procedure and is a core proceeding under 28 U.S.C. § 157(b).

8.    Venue is proper as provided in 28 U.S.C. § 1409 because this adversary proceeding is related to and arises in Debtor's bankruptcy case pending in this District (the "**Bankruptcy Case**").

9.    This Court has jurisdiction over the Trustee as the representative of the Debtor's bankruptcy estate (the "**Estate**"). This Court has jurisdiction over Wells Fargo because Wells

Fargo has submitted to the Court's jurisdiction by appearing in the Bankruptcy Case and filing a proof of claim on July 8, 2020.

**PARTIES**

10.     Plaintiffs Diageo Brands BV, Diageo Scotland Limited, and Diageo North America, Inc. are producer and/or supplier affiliates of Diageo plc, a London-based multinational beverage and alcohol company of some of the most well-known alcohol brands (the "**Diageo Products**") including Buchanan's, Johnnie Walker, Smirnoff, Guinness, Harp, Crown Royal, and Tanqueray gin just to name a few.

11.     Defendant Lois I. Brady is the duly appointed Trustee for the Chapter 7 estate of Fairn & Swanson, Inc. and in that capacity is the proper party in interest to defend against the relief requested herein. The Trustee may be served with process where she regularly conducts business pursuant to Rule 7004(b)(1) by first class mail as follows: Lois I. Brady, Chapter 7 Trustee, P.O. Box 12425, Oakland, CA 94604.

12.     Defendant Wells Fargo provided funding to Debtor pre-petition pursuant to various loan documents that describe a blanket security interest in all property of the Debtor. Wells Fargo, an insured depository institution, has appeared in the Bankruptcy Case by its attorney, and therefore may be served by its attorney pursuant to Rule 7004(h)(1) by first class mail as follows: Jonathan Doolittle, Pillsbury Winthrop Shaw Pittman, LLP, Four Embarcadero Center, 22nd Floor, San Francisco, CA 94111.

**BACKGROUND**

13.     On June 2, 2020 (the "**Petition Date**"), Debtor filed chapter 7 bankruptcy in the United States Bankruptcy Court for the Northern District of California, Oakland Division.

Case: 20-04034    Doc# 1    Filed: 08/13/20    Entered: 08/13/20 09:58:34    Page 4 of 28

14.     Prior to filing bankruptcy, Debtor was in the business of selling and supplying duty free products to duty free shops through two distribution channels: (1) Duty free shops near the U.S./Mexico border, and (2) marine vessels such as cruise ships.

15.     Diageo granted Debtor a non-exclusive license to sell Diageo Products in these distribution channels.

16.     Diageo, together with its parent company, Diageo plc, has a collection of over 200 brands of trademarked spirits and beer, many of which are produced in and shipped from the UK, and sold in more than 180 countries around the world.

17.     Diageo is very selective with whom it does business in order to protect its global reputation, goodwill, brand recognition and integrity, and to prevent market saturation in certain territories.  To further these goals, Diageo tailors its distribution agreements to narrowly authorize the use of its intellectual property (including trademarks) in connection with the sale of its products.

18.     On April 25, 2007, certain Diageo entities and Debtor entered into a "Distribution Agreement relating to Duty Free Market U.S./Mexico Border" (the "**Mexico Border Distribution Agreement**").  Then on May 1, 2013, Diageo Scotland Limited and Debtor entered into a letter agreement for the distribution of duty-free spirits for resale on marine vessels such as cruise lines (the "**Marine Distribution Agreement**," and together with the Mexico Border Distribution Agreement, the "**Diageo Products Distribution Agreements**").[1]

_____

[1] Pursuant to an intercompany agreement, Diageo Brands BV handles invoicing and collection on behalf of Diageo Scotland Limited under the Marine Distribution Agreement.

19.     The Diageo Products Distribution Agreements were amended from time-to-time, but the material terms of the core business relationship between Diageo and the Debtor remained constant since its inception.

20.     The Mexico Border Distribution Agreement governs all transactions between the parties with respect to Diageo Products to be sold at duty free shops on the U.S./Mexico border.  It provides, among other things, that Diageo would:

    a.  Supply Debtor with duty free spirits for resale in a specified territory;[2] and

    b.  Authorize Debtor to use the certain trademarks in connection with the sale of its products in the specified territory.[3]

In exchange, Debtor agreed to, among other things:

    a.  Pay for all products within 90 days:[4]

    b.  Ensure that any reference or use of any trademark or IP owned by Diageo would only be used after Diageo's written approval;[5]

    c.  Refrain from assigning all or any part of the rights outlined in the Mexico Border Distribution Agreement to any third party;[6]

    d.  Promptly notify Diageo of any suspected infringement of the Distributor Parties' IP within the specified market territory in order for Diageo to defend or control such action.[7]

---

[2] The specified territory is defined as duty free shops on the U.S./Mexico border. *See generally*, Mexico Border Distribution Agreement, at 7, ¶2.
[3] *Id*. at 18-19, ¶17.
[4] Mexico Border Distribution Agreement, at 9, ¶4.
[5] *Id*. at 18-19, ¶17.
[6] *Id* at 24, ¶21.
[7] *Id*. at 20, ¶17.8.

21.    The Mexico Border Distribution Agreement also provides that Diageo may terminate the Mexico Border Distribution Agreement if the Debtor is wound up, dissolved or goes into liquidation.[8]  If Diageo does terminate the Mexico Border Distribution Agreement, Diageo is entitled to repossess the products under the terms of that agreement, and the Debtor is no longer permitted to use the license to sell any products.[9]

22.    The Mexico Border Distribution Agreement is a trademark license that contains the provisions necessary to establish the Debtor's use of the Diageo trademarks, including the right to use the trademarks, and the requirement that the Debtor only use the trademarks for the purposes of performing its obligations under the Diageo Products Distribution Agreements.

23.    The Marine Distribution Agreement contained many of the same provisions.[10]

24.    The Diageo Products Distribution Agreements also incorporate by reference Diageo's standard conditions of sale (the "**Diageo General Conditions of Sale**").[11]  The Diageo General Conditions of Sale provided standard terms that were not specifically tailored to Diageo's business relationship with Debtor, but nonetheless supplemented the terms of the Diageo Products Distribution Agreements to the extent the standard terms were consistent with and did not contradict the specifically negotiated terms in the Diageo Products Distribution Agreements.[12]

---

[8] Mexico Border Distribution Agreement at 21 ¶18.2.2.
[9] Mexico Border Distribution Agreement at 23 ¶19.2.1 and ¶19.2.6.1
[10] Marine Distribution Agreement, at 1-2 and Appx. I.
[11] Mexico Border Distribution Agreement, at 25, ¶22.2; Marine Distribution Agreement, at Appx. I.
[12]  Mexico Border Distribution Agreement, at 11, ¶4.17; Marine Distribution Agreement, at 1.

A. The Diageo Products Distribution Agreements are governed by English law.

25.   The writings that comprise the Diageo Products Distribution Agreement all contain a choice of law provision stipulating that the law or England (or England and Wales[13]) shall govern the contracts and related disputes.

26.   The Mexico Border Distribution Agreement contains the following choice of law clause:

> 27 GOVERNING LAW AND JURISDICTION
> The creation performance and termination of this Agreement shall be governed by the laws of England and the parties hereto submit to the exclusive jurisdiction of the High Court of Justice located in London.

27.   The Amendment to the Mexico Border Distribution Agreement contains the following choice of law clause:

> 5 GOVERNING LAW
> This Amendment shall be governed and construed in accordance with the laws of England and Wales.

28.   The Marine Distribution Agreement contains the following choice of law clause:

> This agreement is governed by and shall be interpreted in accordance with English law.

29.   The Diageo General Conditions of Sale attached to the Marine Distribution Agreement contains the following choice of law clause:

---

[13] Choice of law of England v. England and Wales is a distinction without a difference as England and Wales share a common legal system within the UK. *See* Timothy H. Jones, *Wales, Devolution and Sovereignty*, Statute L. Rev., Vol. 33, no. 2, pg. 151 (UK 2012) ("There are three separate legal orders (England and Wales, Scotland and Northern Ireland), each supported by a separate legal system and court structure.").

Case: 20-04034   Doc# 1   Filed: 08/13/20   Entered: 08/13/20 09:58:34   Page 8 of 28

> **12 GOVERNING LAW AND JURISDICTION**
>
> These General Conditions and any Contract and any dispute or claim arising out of or in connection with it or its subject matter or formation (including non-contractual disputes or claims) shall be governed by and construed in accordance with English law and the parties submit irrevocably to the non-exclusive jurisdiction of the English courts. For the avoidance of doubt, the provisions of the Vienna Convention on the International Sale of Goods shall not apply to any Contract. In the event that these General Conditions or any Contract of which these General Conditions form part are translated into another language the English language version shall prevail.

30.     Moreover, each Diageo invoice issued in conjunction with an order from the Debtor has a choice of law provision substantively identical to the choice of law provision in the Diageo General Conditions of Sale. For example, the invoices issued for shipments under the Mexico Border Distribution Agreement provide that the "General Conditions [of sale] and any Contract shall be governed by English law and the parties submit irrevocably to the exclusive jurisdiction of the English courts[,]" and the invoices issued for shipments under the Marine Distribution Agreement similarly provide that the "General Conditions [of sale] and any Contract and any dispute or claim arising out of or in connection with it or its subject matter or formation (including non-contractual disputes or claims) shall be governed by and construed in accordance with English law and the parties submit irrevocably to the exclusive jurisdiction of the English courts."

31.     So, every document that passed between Diageo and Debtor concerning the sale and shipment of Diageo Products consistently memorialized the parties' intent for their business relationship to be governed by English law.

B.   The Diageo Products Distribution Agreements contain express retention of title clauses that require Debtor to pay for the Diageo Products as a condition to the passage of title.

Case: 20-04034   Doc# 1   Filed: 08/13/20   Entered: 08/13/20 09:58:34   Page 9 of 28

32.     The Mexico Border Distribution Agreement includes a reservation of title provision wherein the title to the products remains with Diageo until Debtor paid for such products[14]:

> 4.14   The title to any of the Products will not pass to the Distributor until the Company has received full payment of the price for the Products and all other amounts due from the Distributor.  The Company will be entitled at any time to enter the premises of the Distributor and remove any Products in respect of which title has not passed to the Distributor.

33.     Similarly, the Diageo General Conditions of Sale incorporated into the Marine Distribution Agreement, states:

> 4 RISK AND TITLE
> …
> 4.2 Notwithstanding delivery and the passing of risk in the Products or any other provision of these General Conditions, legal and beneficial title in the Products shall not pass to the Customer until the Seller has received payment in full in cash or cleared funds of all amounts owing to the Seller by the Customer on any account whatever.
> …
> 4.4 Until title in the Products passes to the Customer, the Seller may at any time require the Customer to deliver up the Products to the Seller or as the Seller may direct and, if the Customer fails to do so forthwith, enter any premises of the Customer or any third party where the Products are stored and repossess the Products.  The Customer will provide or procure the provision of access for the Seller to these premises so that the Seller may repossess the Products.
> …
> 4.7 The Customer may not in any way pledge or charge by way of security for any indebtedness any Products in which title has not passed to the Customer and if the Customer does or purports to do so all monies owing by the Customer to the Seller shall (without prejudice to any other rights or remedies of the Seller) become due and payable immediately.

---

[14] *Id*. at 11 ¶4.14.

Case: 20-04034   Doc# 1   Filed: 08/13/20   Entered: 08/13/20 09:58:34   Page 10 of 28

34. English law has a rich tradition in international trade as it has a long history of being selected as the governing law in transnational sales contracts, and as a result England has a well-developed body of reputable jurisprudence on this topic. It is unsurprising then that the Diageo Products Distribution Agreements are governed by English law, particularly given the close connection between Diageo and the UK, where it is headquartered and where the production of many of its trademarked goods originate.

C. Debtor is Holding Over $4 Million of Diageo Products that Diageo Still Owns.

35. According to the Debtor's own records, it owes Diageo $4,564,179.76.[15] Diageo's proofs of claim have the cumulative unpaid total as $4,175,399.41.[16]

## CAUSES OF ACTION

A. Count 1 – Declaratory judgment that Diageo Products are not property of the Estate because Debtor has not satisfied the explicit condition precedent under the parties' contracts and English law to obtain title.

36. Diageo repeats and realleges the allegation set forth in all preceding paragraphs of this Complaint, as if fully set forth herein.

37. Pursuant to 11 U.S.C. § 541(a)(1), property of the Estate includes all legal and equitable interests of Debtor and property of Debtor as of the commencement of the case. As of the Petition Date, Debtor was in possession of the Diageo Products.

38. Under English law, and the contracts that govern the business relationship between Diageo and Debtor, ownership of the Diageo Products, meaning legal and beneficial title, remains

---

[15] *See* Amended Schedules, Dkt. No. 37, pg. 28 at §§ 3.80 and 3.81.
[16] *See* Proofs of Claim 104 and 105.

Case: 20-04034   Doc# 1   Filed: 08/13/20   Entered: 08/13/20 09:58:34   Page 11 of 28

with Diageo because Debtor has not paid for the goods, and has therefore failed to satisfy the valid condition to obtain title.

39.     An actual controversy and dispute exists between Diageo and the Trustee as to the Estate's interest in the Diageo Products, Diageo's legal and beneficial ownership of the Diageo Products, the applicability of the automatic stay and Diageo's right to seek turnover of the Diageo Products.

40.     A present adjudication of this controversy is necessary to guide the parties' future conduct in this proceeding. This Court has the authority, pursuant to 28 U.S.C. § 2201 and FED R. BANKR. P. 7001(1) and (9), to adjudicate this controversy.

41.     Section 2201 of the Judicial Code provides, in pertinent part, the following:

> In a case of actual controversy within its jurisdiction … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201.

42.     Bankruptcy Rule 7001(1) and (9) requires that a proceeding to recover property and to obtain a declaratory judgment on such determination is required to be in the form of an adversary proceeding.

43.     Pursuant to the parties' agreements, legal and beneficial title to the Diageo Products was never conveyed to the Debtor, and the Diageo Products should not be property of the Estate.

Case: 20-04034     Doc# 1     Filed: 08/13/20     Entered: 08/13/20 09:58:34     Page 12 of 28

i. Diageo and Debtor chose English law to govern the Diageo Products Distribution Agreements, so that choice of law provides the framework for the parties' respective rights and interests in the Diageo Products.

44.     The parties' business relationship is governed by the Diageo Products Distribution Agreements pursuant to which Debtor would purchase the Diageo Products for resale in duty free shops near the U.S./Mexico border and marine vessels such as cruise ships.  As agreed between the parties, payment was a condition precedent to the passage of title in the Diageo Products.  The Diageo Products Distribution Agreements provide the framework for the parties' rights and interests in the Diageo Products, which is critical to determining the scope of the Debtor's interests in property since property rights arise from underlying substantive law and are not created by virtue of Section 541 of the Bankruptcy Code.  *See Perry v. Chase Auto Fin. (In re Perry)*, Nos. 1:09-bk-11476-GM, 1:10-ap-01043-GM, 2014 Bankr. LEXIS 1659, at *31 (Bankr. C.D. Cal. Apr. 16, 2014) citing *Butner v. United States*, 440 U.S. 48, 55, 99 S. Ct. 914, 59 L. Ed. 2d 136 (U.S. 1979) (The estate's rights and interests under Section 541 are determined under applicable non-bankruptcy law.).  In this case, English law is the underlying substantive law that governs the issue of property rights.

45.     The writings that comprise the parties' contractual relationship, including the Diageo Products Distribution Agreements, contain a choice of law provision stipulating that the law of England (or England and Wales) shall govern the contracts and related disputes.  This contractual choice of law agreed to by the parties is valid and should be enforced by the Court.

46.     Courts in the Ninth Circuit have analyzed the validity of choice of law clauses under *The Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 32 L. Ed. 2d 513, 92 S. Ct. 1907 (1972), in which the Supreme Court stated that courts should enforce choice-of-law and choice-of-forum clauses in cases of "freely negotiated private international agreements." *Batchelder v. Nobuhiko*

Case: 20-04034    Doc# 1    Filed: 08/13/20    Entered: 08/13/20 09:58:34    Page 13 of 28

*Kawamoto*, 147 F.3d 915, 918 (9th Cir. 1998) (citing *The Bremen,* 407 U.S. at 12-13); *see also Richards v. Lloyd's of London*, 135 F.3d 1289, 1294 (9th Cir. 1998) (en banc) (applying U.S. Supreme Court law to find English choice of law and forum clause enforceable).

47.    The Supreme Court in *Bremen* voiced a strong public policy in favor of recognizing international choice of forum and law[17] provisions, reasoning that "the elimination of all [] uncertainties [regarding the forum] by agreeing in advance . . . is an indispensable element in international trade, commerce, and contracting." *The Bremen,* 407 U.S. at 12-13. *See also Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 517 n. 11 (1974) (The Supreme Court has further explained that, in the context of an international agreement, there is "no basis for a judgment that only United States laws and United States courts should determine this controversy in the face of a solemn agreement between the parties that such controversies be resolved elsewhere.").

48.    This federal common law recognition of parties' contractual choice of law in the context of international commercial contracts is consistent with other relevant authorities. *See* Restatement (2d) of Conflict of Laws 187(1) ("The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue."); Uniform Commercial Code 1-301(a) ("Except as otherwise provided in this section, when a transaction bears a reasonable relation to this state and also to another state or nation the parties may agree that the law either of this state or of such other state or nation shall govern their rights and duties");

---

[17] While the contract in *Bremen* did not contain a choice of law clause, the Supreme Court explicitly recognized that the forum selection clause also acted as a choice of law clause. *Id.* at 13 n.15 ("While the contract here did not specifically provide that the substantive law of England should be applied, it is the general rule in English courts that the parties are assumed, absent a contrary indication, to have designated the forum with the view that it should apply its own law. . . . It is therefore reasonable to conclude that the forum clause was also an effort to obtain certainty as to the applicable substantive law.").

Case: 20-04034    Doc# 1    Filed: 08/13/20    Entered: 08/13/20 09:58:34    Page 14 of 28

Hague Conference on Private International Law Principles on Choice of Law in International Commercial Contracts (US and UK are members) ("At their core, the Hague Principles are designed to promote party autonomy in international commercial contracts. By acknowledging that parties to a contract may be best positioned to determine which set of legal norms is most suitable for their transaction, party autonomy enhances predictability and legal certainty – important conditions for effective cross-border trade and commerce.").

49.     In *Richards*, citizens and residents of the United States sued a foreign firm in California district court under federal and state securities laws. *Id.* at 1291-92. Their investment agreement contained a forum-selection clause requiring the parties to adjudicate any disputes in "the courts of England" and under "the laws of England." *Id.* at 1292. The plaintiffs argued that the forum-selection clause did not apply due to the antiwaiver provisions of the federal securities laws and the strong public policy of preserving investors' remedies under federal and state securities laws. *Id.* at 1293-94. The court rejected the plaintiffs' argument that the antiwaiver provisions barred enforcement of the forum-selection clause, holding, in effect, that the strong federal policy in favor of enforcement of such clauses superseded the statutory antiwaiver provision. *Id.* at 1294-95. In reaching this conclusion, the court acknowledged the vastly different outcome under English law given the defendant's immunity for causes of action that would otherwise be available under US law, but nevertheless determined that English law offered sufficient protection. *Id.* at 1294.

50.     Like the contract at issue in *Richards,* the Diageo Products Distribution Agreements contain valid choice of law clauses that determine the substantive law applicable to the issues of ownership, rights, and control of the Diageo Products. *See Milanovich v. Costa Crociere*, S.P.A., 293 U.S. App. D.C. 332, 954 F.2d 763, 767 (D.C. Cir. 1992) (finding if "choice-

Case: 20-04034    Doc# 1    Filed: 08/13/20    Entered: 08/13/20 09:58:34    Page 15 of 28

of-law provision is enforceable, we will use the law that it selects to evaluate the enforceability of the remainder of the contract terms").

    ii.  <u>Under English Law, Diageo retains legal and beneficial title to the Diageo Products until Debtor pays the purchase price in full.</u>

51.    The Diageo Products Distribution Agreements require the application English law, and therefore, the particular statutory scheme that applies to the question of ownership of goods is the UK Sale of Good Act 1979, which specifically provides for the seller's retention of title and superior right of possession until payment:

> In the United Kingdom provisions for inserting reservation of title clauses can be found in the Sale of Goods Act 1979. Pursuant to section 17, property passes when the parties intend it to pass, and following section 19(1) the seller can "reserve the right of disposal of the goods until certain conditions are fulfilled … notwithstanding the delivery of the goods to the buyer … the property in the goods does not pass to the buyer until the conditions imposed by the seller are fulfilled". Hence the buyer may be given possession of the goods, but the seller can remain owner of them until the buyer discharges his contractual duties. The seller has the right to repossess the goods if the buyer defaults. But the seller is not regaining ownership (he never transferred it), he merely regains possession of the goods.

Giorgio Monti, Gilles Nejman, and Wolf J. Reuter, *The Future of Reservation of Title Clauses in the European Community,* 46 Int'l & Comp. L.Q. pp 866-907 (UK 1997).  Thus, under English law until the agreed upon condition precedent has been satisfied the buyer owns no interest in the goods.

52.    The "retention of title" concept is also explicitly incorporated into the UK's insolvency law:

> "retention of title agreement" means an agreement for the sale of goods to a company, being an agreement—
>
>   (a) which does not constitute a charge on the goods, but
>
>   (b) under which, if the seller is not paid and the company is wound up, the seller will have priority over all other creditors of the company as respects the goods or any property representing the goods;

Insolvency Act 1986 (c. 45), s. 251.

53.     UK courts enforce retention of title clauses in sales contracts and recognize a seller's right to reclaim goods that have not been paid for.  For example, in *Clough Mill Ltd v Martin* [1984] 3 All ER 982, [1985] 1 WLR 111, the plaintiff supplied a quantity of yarn to a company called Heatherdale Fabrics Ltd on terms that the goods were to remain its property until paid for in full, although Heatherdale was granted the power to sell the goods or use them for the purpose of manufacturing products. The contract also provided that if any payment were overdue the plaintiff could recover or resell the goods and enter Heatherdale's premises for that purpose. When the defendant was appointed receiver of Heatherdale the plaintiff informed him that it wished to repossess the unused yarn and asked to be allowed to collect it. The defendant refused on the grounds that the retention of title clause amounted to a security interest and was void for non-registration and proceeded to allow Heatherdale to use the yarn.  On appeal, the court held that ownership (referred to as "property" in English law parlance) in the yarn had not passed to Heatherdale.  Since the yarn claimed by the plaintiff was at the time of their claim identifiable, unused and unpaid for, they retained legal and beneficial title to it and were entitled to damages against the receiver for wrongfully depriving them of possession.

54.     In *Armour v Thyssen Edelstahlwerke AG* [1990] 3 All ER 481, [1991] 2 AC 339 the defendant supplied steel to a manufacturing company under a contract which contained a retention of title clause. The plaintiffs, who had been appointed as receivers, brought proceedings against the supplier seeking a declaration that property in the steel had passed to the company, despite the fact that payment had not been made. The suppliers argued that the retention of title clause was effective to prevent title passing.  The court agreed, referring to sections 17 and 19 of

Case: 20-04034    Doc# 1    Filed: 08/13/20    Entered: 08/13/20 09:58:34    Page 17 of 28

the Sale of Goods Act 1979, and held that property passed when the parties agreed that it should pass and therefore not until the goods had been paid for.

55.     In *Chaigley Farms Ltd v Crawford, Kaye & Grayshire Ltd (t/a Leylands)*, [1996] BCC 957, the plaintiff supplied live animals to an abattoir under a contract which contained a retention of title clause. Both parties contemplated that the animals would or might be slaughtered before they had been paid for. When receivers were appointed over the abattoir the plaintiffs sought to enforce the retention of title clause in order to recover the remaining live animals and butchered meat which they alleged were their property.  The court held that the clause related only to live animals and that when they were slaughtered the plaintiffs' title to them was extinguished.

56.     There are also numerous cases in which the receiver of an insolvent buyer agrees based on the retention clause to return unpaid goods in the possession of the insolvent buyer to the seller, thus reducing the seller's claim.  *See e.g.,  Re BHT Group Ltd (in liquidation)*, 2015 IECA 191 ( July 29, 2015) at ¶6 (reciting factual background that liquidating trustee "accepted that [goods delivered to insolvent buyer and still physically present at buyer's premises] were the subject matter of a valid retention of title clause, and [the trustee] accordingly discharged that sum [of the liquidated goods in the buyer's possession at the time of the asset sale]" to the seller); *Carroll Group Distributors Limited, Plaintiff v G and JF Bourke Limited (in Voluntary Liquidation) and Bourke (Sales) Limited (in Voluntary Liquidation)*, [1990] 1 IR 481 (affirming parties' agreement that seller was entitled to identified goods supplied to and in the possession of the insolvent buyer and the goods were returned to the seller reducing the buyer's indebtedness to the seller).

Case: 20-04034    Doc# 1    Filed: 08/13/20    Entered: 08/13/20 09:58:34    Page 18 of 28

57.     As for American courts, the recognition of contractual retention of title clauses as actually that, and not merely a reservation of a security interest, is not a completely foreign concept.  In *Wave Maker Shipping Co. v. Hawkspere Shipping Co.*, 56 F. App'x 594 (4th Cir. 2003), the court determined that maritime fuel bunkers were not subject to attachment of creditor's lien because the fuel contract between debtor and fuel supplier was governed by the UK Sale of Goods Act and contained a retention of title clause, so even though debtor had possession of the bunkers, title to the bunkers had not passed from supplier to debtor because it had not paid for them.  *Id.* at 595.  In *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 2009 U.S. Dist. LEXIS 3095 (S.D.N.Y. Jan. 13, 2009), the court determined that the retention of title provision in the parties' distribution agreement was governed by Italian law, not the California Uniform Commercial Code, so the senior perfected lienholder's claim to the inventory was subordinate to the supplier's absolute title claim under Italian law.  *Id.* at *34.  Finally, in *Usinor Industeel v. Leeco Steel Prods.*, 209 F. Supp. 2d 880, 886 (N.D. Ill. 2002), while the court ultimately determined that the Illinois Uniform Commerical Code applied to the international sale of goods contract that did not contain a choice of law clause, which required the court to engaged in a "most significant contacts" analysis, it acknowledged that the result would be different if French law had applied because "under French law, the seller of goods has an absolute right to contract for title until payment."  *Id.* at 866.

58.     Under the parties' choice of English law, as well as pursuant to their explicit contractual agreement, Diageo retains legal and beneficial title to all Diageo Products that the Debtor has not paid for and such Diageo Products are not property of the Estate.  This ownership right is superior to the bare possession had by the Debtor, and therefore Diageo seeks an order for declaratory relief stating as follows:

Case: 20-04034    Doc# 1    Filed: 08/13/20    Entered: 08/13/20 09:58:34    Page 19 of 28

a. The Diageo Products that have not been paid for are not property of the Estate; and

b. The Trustee has no valid interest in the Diageo Products sufficient to retain possession of and sell the Diageo Products.

B. Count 2 – Declaratory judgment that Diageo's legal and beneficial title to the Diageo Products is superior to the claims of any other party, including Wells Fargo's security interest in Debtor's inventory.

59. Diageo repeats and realleges the allegation set forth in all preceding paragraphs of this Complaint, as if fully set forth herein.

60. Under English law, and the contracts that govern the business relationship between Diageo and Debtor, ownership of the Diageo Products, meaning legal and beneficial title, remains with Diageo because Debtor has not paid for the goods, and has therefore failed to satisfy the valid condition to obtain title. Consequently, Debtor did not have the power to convey a security interest in the Diageo Products to Wells Fargo.

61. An actual controversy and dispute exists between Diageo and Wells Fargo as to their respective interests in the Diageo Products.

62. A present adjudication of this controversy is necessary to guide the parties' future conduct in this proceeding. This Court has the authority, pursuant to 28 U.S.C. § 2201 and FED R. BANKR. P. 7001(2) and (9), to adjudicate this controversy.

63. Section 2201 of the Judicial Code provides, in pertinent part, the following:

In a case of actual controversy within its jurisdiction … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201.

64.    Bankruptcy Rule 7001(2) and (9) requires that a proceeding to determine the validity, priority, or extent of a lien or other interest in property and to obtain a declaratory judgment on such determination is required to be in the form of an adversary proceeding.

65.    The security agreement between Debtor and Wells Fargo describes a broad security interest in all of Debtor's assets, including inventory.  However, before Wells Fargo's security interest could attach to collateral and be enforceable against Debtor and third parties such as Diageo, Debtor had to have rights in the collateral or the power to transfer rights in the collateral to Wells Fargo.  *See* Cal. U. Com. Code § 9203(b)(2).

66.    The Debtor cannot transfer or grant a security interest in rights or property that it does not have.  It follows that if the Debtor does not have title to the Diageo Products that it does not have sufficient rights in the Diageo Products or the power to transfer Diageo's rights in the Diageo Products in order to pledge the Diageo Products as collateral.  As explained in Count 1, under the Diageo Products Distribution Agreements, title to the Diageo Products did not convey to Debtor until they were paid for, so until that condition was satisfied, Debtor did not have sufficient rights in the Diageo Products to support the attachment of Wells Fargo's security interest.  Moreover, Diageo never consented to Debtor's use of the Diageo Products as security, and the Diageo General Conditions of Sale explicitly prohibits Debtor from pledging unpaid Diageo Products as security for any indebtedness.

67.    Under the parties' choice of English law and the express terms of their agreements, Diageo retains legal and beneficial title to all Diageo Products that the Debtor has not paid for.  This ownership right coupled with Diageo's lack of consent for the use of Diageo Products as security means that Debtor did not have sufficient rights in the Diageo Products for Wells Fargo's

Case: 20-04034    Doc# 1    Filed: 08/13/20    Entered: 08/13/20 09:58:34    Page 21 of 28

security interest to attach.  Therefore, Diageo seeks an order for declaratory relief stating that Wells Fargo's security interest did not attach to the unpaid Diageo Products. [18]

C.  Count 3 – In the alternative, declaratory judgment that the Diageo Products Distribution Agreements are executory contracts that cannot be assumed and assigned without the consent of Diageo and may be terminated under applicable trademark law pursuant to 365(e).

68.  Diageo repeats and realleges the allegation set forth in all preceding paragraphs of this Complaint, as if fully set forth herein.

69.  Diageo owns the registered, protectable trademarks for the Diageo Products, and the sale of Diageo's trademarked goods by unauthorized distributors raises the prospect of market confusion.  Therefore, the distribution of Diageo Products requires Diageo's permission to use its intellectual property including its trademarks in connection with the marketing and sale of the goods.  For that reason, Diageo is very selective with the companies it allows to distribute its products.

70.  The Diageo Products Distribution Agreements contain non-exclusive intellectual property licenses that establish strict parameters for the sale of Diageo's trademarked goods for the purpose of ensuring the protection of Diageo's global reputation, goodwill, brand recognition and integrity, and to prevent market saturation in certain territories.

---

[18] Even if the court were to find that Wells Fargo had a security interest in the Diageo Products, the Diageo Products Distribution Agreements prohibit assignment of any rights in the Diageo Products Distribution Agreements and prohibits the Debtor from granting a security interest in the Diageo Products to any third party.  Pursuant to Cal. U. Com. Code § 9408, the anti-assignment provisions of the Diageo Products Distribution Agreements are overridden for the limited purposes of permitting a security interest to attach and be perfected.  However, Wells Fargo will not be able to use or enforce the license under the Diageo Products Distribution Agreements and will not be able to use any Diageo trademark in connection with the exercise of any remedies under the Uniform Commercial Code.

Case: 20-04034    Doc# 1    Filed: 08/13/20    Entered: 08/13/20 09:58:34    Page 22 of 28

71.     These circumstances give rise to an actual controversy and dispute between Diageo, the Trustee, and any prospective buyer of the Diageo Products as to their respective interests in the Diageo Products given Diageo's legally protectible intellectual property interests.

72.     A present adjudication of this controversy is necessary to guide the parties' future conduct in this proceeding. This Court has the authority, pursuant to 28 U.S.C. § 2201 and FED R. BANKR. P. 7001(2) and (9), to adjudicate this controversy.

73.     Section 2201 of the Judicial Code provides, in pertinent part, the following:

In a case of actual controversy within its jurisdiction … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201.

74.     Bankruptcy Rule 7001(2) and (9) requires that a proceeding to determine the validity, priority, or extent of a lien or other interest in property and to obtain a declaratory judgment on such determination is required to be in the form of an adversary proceeding.

75.     As previously alleged, the Diageo Products are not property of the Estate under applicable English law as well as under the explicit terms of the distribution agreements. Even if this Court finds that the Diageo Products are property of the Estate, the Trustee is precluded from using and selling the Diageo Products under both Section 365(c)(1) and 365(e)(2) of the Bankruptcy Code. The Trustee may not assume the Diageo Products Distribution Agreements without Diageo's consent under Section 365(c)(1) of the Bankruptcy Code. In addition, Diageo has the right to terminate the trademark license set forth in the Diageo Products Distribution Agreements because it is not required to accept performance from the Trustee under Section

Case: 20-04034    Doc# 1    Filed: 08/13/20    Entered: 08/13/20 09:58:34    Page 23 of 28

365(e)(2) of the Bankruptcy Code. [19] If Diageo terminates the Diageo Products Distribution Agreements, Diageo has the right to repossess the Diageo Products under the terms of that agreement.[20] If the Trustee sells the Diageo Products without curing the payment default under the Diageo Products Distribution Agreements and obtaining Diageo's consent, the Trustee will be infringing on Diageo's trademarks. The same would be true of any entity that purchases the Diageo Products, unless Diageo consents. To the extent Diageo needs relief from stay to give notice of termination of the contract, upon such relief this complaint will serve as written notice under the Diageo Products Distribution Agreements that the Diageo Products Distribution Agreements are terminated, or as a request for Diageo to receive relief from stay in order to terminate the Diageo Product Distribution Agreements.

76. Section 365(c)(1) of the Bankruptcy Code generally provides that a trustee may assume or assign an executory contract whether or not the executory contract prohibits assignment. However, Section 365(c)(2) of the Bankruptcy Code provides an exception if "applicable law excuses" the non-debtor party "from accepting performance from the debtor or debtor in possession." 11 USC §365(c)(1)(A). Similarly, Section 365(e)(1) generally provides that a non-debtor counter party to an executory contract may not terminate the contract based upon the insolvency or financial condition of the debtor; and Section 365(e)(2) provides an exception to that general rule by providing that a non-debtor party may terminate an executory contract if applicable law excuses the non-debtor party from accepting performance from the trustee or an assignee of such contract. 11 USC §365(e)(2)(A). The applicable law referred to in Section 365

---

[19] Non-exclusive licenses for the use of intellectual property are executory contracts under the Bankruptcy Code. *In re Access Beyond Tech., Inc.*, 237 B.R. 32, 45-47 (Bankr. D. Del. 1999); *In re Golden Book Family Entm't, Inc.*, 269 B.R. 300, 309 (Bankr. D. Del. 2001).

[20] Mexico Border Distribution Agreement at 23 ¶19.2.1.

Case: 20-04034    Doc# 1    Filed: 08/13/20    Entered: 08/13/20 09:58:34    Page 24 of 28

is any nonbankruptcy law, and trademark law is "applicable law" under Section 365 of the Bankruptcy Code. *In re XMH Corp*. 647 F3d 690, 697 (7th Cir 2011). Trademark licenses are personal in nature and the licensor is not required to accept performance from a third-party unless the licensor consents. *Me Renee World v. Elite World LLC*, 674 Appx 620, 622 (9th Circ. 2016) ("It is well established that a trademark license cannot be assigned without the consent of the owner of the mark."); *N.C.P. Mktg. Group, Inc. v BG Star Prods., Inc. (In re N.C.P. Mktg. Group, Inc.)*, 337 BR 230, 237-238 (D Nev 2005) *aff'd* (9th Cir 2008) 279 Fed Appx 561 (unpublished opinion), *cert denied* (2009) 556 US 1145, 129 S Ct 1577 ("*NCP Marketing Group*"). Therefore, under Section 365(e)(2) of the Bankruptcy Code, because the Diageo Products Distribution Agreements are trademark licenses that prohibit assignment and permit the termination of the license upon the insolvency of the Debtor, Diageo is entitled to terminate the Diageo Products Distribution Agreements and is not required to accept performance of the Diageo Products Distribution Agreements from the Trustee. All sales of the Diageo Products by the Debtor are governed by the restrictions of the Diageo Products Distribution Agreements, and Diageo is not required to accept performance by the Trustee of those obligations under the Diageo Products Distribution Agreements because Diageo did not originally contract with the Trustee. The Diageo Product Distribution Agreements carefully limit the territory of sale and the standards and requirements for the use of its trademarked goods in order to protect its brand name consistent with a trademark license. Diageo should be permitted to terminate the Diageo Products Distribution Agreements and exercise its remedies under those agreements, including repossession of the Diageo Products. Section 365(e)(2) specifically refers to "the trustee" as being a party to whom the nondebtor party does not have to accept performance. Diageo

Case: 20-04034    Doc# 1    Filed: 08/13/20    Entered: 08/13/20 09:58:34    Page 25 of 28

understands that it must request relief from stay to terminate the Diageo Products Distribution Agreements and requests relief from stay in connection with this declaratory relief action.[21]

77.    Even if the Court determines that the Diageo Product Distribution Agreements cannot be terminated under Section 365(e)(2) of the Bankruptcy Code, based upon Ninth Circuit law the Trustee is not able to assume the Diageo Product Distribution Agreements without Diageo's consent.   Pursuant to *Perlman v Catapult Entertainment, Inc. (In re Catapult Entertainment, Inc.)* 165 F3d 747. (9th Cir 1999) ("*Catapult*"), if applicable law excuses the performance by a nondebtor party, then the trustee cannot assume or assign the contract.   The Ninth Circuit has determined that the plain meaning of Bankruptcy Code §365(c)(1) requires courts to consider a "hypothetical test" which means that "a debtor in possession may not assume an executory contract over the nondebtor's objection if applicable law would bar assignment to a hypothetical third party, even where the debtor in possession has no intention of assigning the contract in question to a third party." *Id.* at 750. While *Catapult* involved patent law, trademark law has been determined to be applicable law within the meaning of Section 365(c)(1), including in the Ninth Circuit. *N.C.P. Marketing Group, Inc* 337 BR at 237; see also, *In re XMH Corp.* 647 F3d 690 (7th Cir 2011) (trademark licenses not assignable without clause expressly authorizing assignment); *Wellington Vision, Inc. v Pearle Vision, Inc. (In re Wellington Vision, Inc.)* 364 BR 129 (SD Fla 2007); *In re Trump Entertainment Resorts, Inc.* 526 BR 116 (Bankr Del 2015). The analysis using trademark law as outlined in *NCP Marketing* is the same as in *Catapult;* once it is determined that the contract cannot be assigned, the Trustee cannot use the contract if the

---

[21] Diageo believes that it provided judicial economies by bringing all causes of action in one adversary proceeding rather than file a separate motion for relief from stay with respect to the Diageo Products Distribution Agreements.  Diageo is prepared to file a motion for relief from stay at the court's request.

Case: 20-04034    Doc# 1    Filed: 08/13/20    Entered: 08/13/20 09:58:34    Page 26 of
28

nondebtor party does not consent. Diageo has not consented to the Trustee assuming the Diageo Product Distribution Agreements, and because the Diageo Product Distribution Agreements are trademark licenses, the Trustee is not permitted to use the license provided under the Diageo Product Distribution Agreements to sell the Diageo Products.

78.     For these reasons, Diageo may terminate the Diageo Products Distribution Agreements under the ipso facto clause contained in each agreement, pursuant 11 U.S.C. 365(e). Upon termination the Trustee will not be able to sell the Diageo Products and Diageo may repossess all Diageo Products. In addition, the Diageo Product Distribution Agreements may not be assumed or assigned by the Trustee. Under the reasoning of *Catapult*, the Trustee currently does not have the right to use the trademark license or the right to use or sell the Diageo Products, unless Diageo consents. Under either analysis, the Trustee may not sell the Diageo Products under the Diageo Product Distribution Agreements.

### RELIEF REQUESTED

Wherefore, Diageo respectfully requests that the Court enter judgment as follows:

A.      On Count 1, declaratory relief that the Diageo Products are not property of the Estate and there is no basis to allow the Trustee to retain possession of the Diageo Products.

B.      On Count 2, declaratory relief that no security interests, liens, or other claims have attached to the Diageo Products, and that Diageo's legal and beneficial ownership of the Diageo Products is superior to the Estate's interests and the claims of all other third-parties;

C.      On Count 3, alternative declaratory relief that the Diageo Products Distribution Agreements are executory contracts that may be terminated, and that the Debtor may not sell or use the Diageo Products without a license;

D.      For attorneys' fees and costs incurred herein; and

Case: 20-04034    Doc# 1    Filed: 08/13/20    Entered: 08/13/20 09:58:34    Page 27 of 28

E.     For such other and further relief as this Court may deem just and proper.

Dated: August 13, 2020                    ROCHELLE MCCULLOUGH, LLP

                                          By: */s/ Andrew E. Jillson*
                                          Andrew E. Jillson, *pro hac vice*
                                          Kathryn G. Reid, *pro hac vice*

                                          -and-

                                          FRIEDMAN & SPRINGWATER LLP

                                          By: */s/ Ellen A. Friedman*
                                          Ellen A. Friedman
                                          Ruth Stoner Muzzin

                                          Attorneys for Creditors
                                          DIAGEO BRANDS BV, DIAGEO NORTH
                                          AMERICA, INC. AND DIAGEO SCOTLAND
                                          LIMITED